**FOLEY CONSTRUCTION COMPANY,**
a Corporation, et al., Appellants,

v.

**Henry WARD, Commissioner of the Department of Highways, etc., et al., Appellees.**

Court of Appeals of Kentucky.

Oct. 25, 1963.

Rehearing Denied March 6, 1964.

Robin Griffin, Miller, Griffin & Marks, Lexington, for appellants.

Donald Moloney, Lexington, John B. Breckinridge, Atty. Gen., William A. Lamkin, Jr., Asst. Atty. Gen., James J. Shannon, Jr., Frankfort, for appellees.

MONTGOMERY, Judge.

The decisive question is: May the Department of Highways, an agency of the state, defeat an action for damages for breach of a contract by the plea of sovereign immunity?

Foley Construction Company, a corporation, and Harry D. Foley, doing business as Foley Construction Company, sued Henry Ward, Commissioner, and the Department of Highways of the Commonwealth of Kentucky for $1,197,046.33 as damages for the breach of a contract to construct 3.585 miles of grade and drain work on Interstate Highway 75 in Covington. The bid price of the contract was $5,695,881, all of which

has been paid except $1,000. This sum has been withheld by the Department pending a release under the contract. Interest is claimed on both amounts sought. An appeal has been taken from a judgment in favor of the Department. The Department has cross-appealed from the ruling denying it the defense of sovereign immunity. Other questions are presented but are not decided.

The doctrine of sovereign immunity has always been embodied in the common law of the United States and of the individual states. The original concept often stated as "The king can do no wrong" arose out of the feudal dogma of divine right of kings and their infallibility. The authority of the king was considered absolute.

Redress for injuries from the crown suffered by a subject was sought by petition to the king. The petition was granted as a matter of grace. If the petition was properly presented, the usual way was for the king to endorse or underwrite "foit droit fait al partie" (let right be done to the party). 1 Blackstone's Commentaries, Page 203. In all cases it appears that some endorsement or order of the king himself was necessary to warrant further proceeding.

Originally, claims for money if successfully presented were satisfied from the king's personal funds. Later, as the king became dependent on the ordinary support of the government, it became necessary for Parliament to provide funds for the redress of such wrongs or payment of the claim. Thus arose the present principle in which the assent of the Legislature is required in order to sue the state. Chisholm Ex'r v. Georgia, 2 Dall. 419, 2 U.S. 419, 1 L.Ed. 440.

■■■■ Immunity from suit is a sovereign right of the state. Sovereign rights are deemed essential to the existence of the state. The right of eminent domain, that is, the right of the sovereignty to use property of its members for the public good or necessity, is another sovereign right. Gilmer v. Limepoint, 18 Cal. 229. Sovereign rights are the supreme, absolute power to govern, which are possessed and exercised by both the United States and the individual states.

The right of sovereign immunity in Kentucky has existed from the beginning of the Commonwealth. Article VIII, Section 4, 1792 Kentucky Constitution provides: "The legislature shall direct by law in what manner and what courts suits may be brought against the Commonwealth." With minor variations this principle has been embodied in each of the succeeding Constitutions. Article VI, Section 6, 1799 Kentucky Constitution; Article VIII, Section 6, 1850 Kentucky Constitution; and Section 231, 1891 Kentucky Constitution.

Deitzman, J., stated the purpose of the provision to be:

"The reason for exempting a municipality or sovereign from damages for injuries inflicted in the performance of its governmental functions is one of public policy to protect public funds and public property. Taxes are raised for certain specific governmental purposes, and, if they could be diverted to the payment of damage claims, the more important work of government, which every municipality or sovereign must perform, regardless of its other relations, would be seriously impaired, if not totally destroyed. The reason for the exemption is sound and unobjectionable."

Taylor v. Westerfield, 233 Ky. 619, 26 S.W. 2d 557, 69 A.L.R. 482.

Kentucky Constitution Section 230 complements Section 231. It contains prohibitions against withdrawal of money from the State Treasury and against the diversion of highway money from the purposes intended. In this regard both sections are intended to promote an orderly system for the disposition of public money.

The immunity of the sovereign from suit has long been recognized. In Tate v. Salmon, 79 Ky. 540, 3 Ky.Law Rep. 359, Lewis, C. J., wrote:

"It has been repeatedly decided by this court that, in the absence of a law au-

thorizing it, the state cannot be made a party-defendant or garnishee, and is not suable in her own courts; 'that parties will not be allowed to evade this inhibition by ignoring the state in their suits, and proceeding directly against the public officer having the custody of the moneys sought to be reached.' (Divine v. Harvie, 7 [T.B.] Mon. [439], 440; Tracy v. Hornbuckle, 8 Bush, 336; Rodman v. Musselman, 12 Bush, 336 [354].)"

Originally, the right to sue the state was obtained by a joint resolution enacted by the Legislature. Commonwealth v. Haly, 106 Ky. 716, 51 S.W. 430, 21 Ky.Law Rep. 666; Commonwealth v. Lyon, 24 Ky.Law Rep. 1747, 72 S.W. 323; Carroll v. Bosworth, 151 Ky. 337, 151 S.W. 916. Later the Legislature by a series of enactments provided the Board of Claims as the means by which certain claims against the state might be prosecuted. Throughout the litigation involving this method of procedure, the doctrine of sovereign immunity has been recognized. The Board of Claims method so provided was recognized as a legislative waiver of the right of sovereign immunity. See Morrison v. Department of Highways, Ky., 252 S.W.2d 426; Bach v. Bach, Ky., 288 S.W.2d 52; Commonwealth v. McCoun, Ky., 313 S.W.2d 585. In the Bach case, Sims, J., said:

"Under § 231 of the Kentucky Constitution, no one can sue the State without its consent, which is usually given by a joint resolution of the General Assembly. Carr v. Jefferson County, 275 Ky. 685, 122 S.W.2d 482."

While appellants point to V. T. C. Lines, Incorporated, v. City of Harlan, Ky., 313 S.W.2d 573, as an expression of the discontent of the "majority of the court" with the rule, there is little significance in such claim. In Commonwealth v. McCoun, Ky., 313 S.W.2d 585, sovereign immunity and legislative waiver of the doctrine were exhaustively considered shortly after the V. T. C. Lines case. Nowhere in the lengthy majority and minority opinions in the McCoun case is there to be found any suggestion that the sovereign immunity of the state should be removed except by legislative enactment. Petitions for rehearing were considered in both cases and denied the same day, June 20, 1958.

The doctrine has remained sacred and inviolate until recently. Appellants rely mainly on Watkins, Consulting Engineer v. Department of Highways, Ky., 290 S.W.2d 28, and Derby Road Building Company v. Commonwealth, Ky., 317 S.W.2d 891, as affording a breach in the doctrine. Humphreys v. J. B. Michael Company, Ky., 341 S.W.2d 229, is also cited.

It should be remembered that appellants have been paid the bid price of the contract, $5,695,881, except $1,000. By this suit they seek to recover damages for an alleged breach of the contract. The redress they seek arises from the failure of employees and/or officials of the Department to perform properly their duly authorized statutory duties. Typical of the omissions and delinquencies was the premature issuance of a work order by the then Commissioner or someone for whose failure he was responsible.

In this respect the present case is distinguishable from the Watkins case. At issue in the Watkins case was the question whether an arbitration agreement could be enforced to determine the amount of compensation to be paid an engineering firm for its services which were made necessary by added specifications under a contract with the Department. Such claim was for compensation for services performed pursuant to the contract rather than by reason of any breach of a contract.

While recognizing the immunity of the state from suit in the Watkins case, it was decided that the claim should be sustained as arising out of the performance of a legal contract under proper statutory authority. Appellants do not contend that there is any direct statutory authority to pay damages for breach of a contract.

After having sustained the arbitration agreement to determine the amount of the claim, the Court in the Watkins case, in what amounts to dictum, suggested that the agreement might be sustained on the basis of mutuality of contractual obligation. An authorization to sue or be sued was implied from the statute which authorized the Department to enter into a contract. In this, appellants take comfort.

This implication is doubly wrong. First, Section 231 of the Kentucky Constitution and the cases decided thereunder are very specific in saying that: "The General Assembly may, by law, direct in what manner and in what courts suits may be brought against the Commonwealth," thus leaving no room to imply that a suit may be brought. The detailed method of procedure for presenting claims against the state prior to the existence of the Board of Claims is an example of the legislative action which had been considered necessary.

■ Secondly, mutuality of obligations does not require that there shall be mutuality of remedies. It has been pointed out that this is true. The following from Corbin on Contracts, Volume 1, Section 146, pages 635–638, illustrates:

"The law of contract is not limited to agreements that create reciprocal legal duties. * * *"

"* * * There are some notable exceptions to the stated rule, if it really exists, in which one party may be bound by his promise even though the other party is not. It is difficult to find any support for the supposed rule, other than mere dicta of judges and writers, made perhaps with nothing but 'illusory' promises in mind."

After pointing out several common exceptions, such as a bilateral contract by an adult and an infant, Corbin says:

"The promises of a sovereign government, including those of the United States and of the individual States, can-not be enforced in the courts unless there is definite legislation authorizing such action. The fact that the promise of the government is unenforceable does not render it an insufficient consideration for the promise of the other party to the contract."

This rule was followed in University of Maryland v. Maas, 173 Md. 554, 197 A. 123, wherein it was held that the university, like other state governmental agencies, is immune from suit for breach of a building contract in the absence of legislation to the contrary. In Lohr v. Upper Potomac River Commission, 180 Md. 584, 26 A.2d 547, it was held that the state agency was not liable in a tort case even though the Act under which it was created expressly provided for suits by and against it. The Maryland Court held that authority "to sue and be sued" did not constitute a waiver of immunity from suit and that the immunity of a state can be invoked whenever a creature of the state is performing some governmental function.

The Supreme Court of California, on March 20, 1963, held that the unrestricted power of the state to impair its contract obligation by a plea of sovereign immunity did not render the contract illusory. Metropolitan Water District of Southern California v. Marquardt, Cal., 28 Cal.Rptr. 724, 379 P.2d 28. It was pointed out that such case is one of many exceptions to the rule that a bilateral contract not binding on one party is illusory, citing Restatement, Contracts, Sections 80, 84(e); 1 Corbin on Contracts (1950) Section 146, pages 465–468; 1 Williston on Contracts (3d ed. 1957) Section 105, pages 414–419.

The Court also said:

"* * * a contract does not lack mutuality where the promise of one of the parties is unenforceable or voidable because of 'a special privilege not expressly reserved in the promise but given by the law.' Well-known examples of such exceptions are voidable contracts of infants and insane persons.

Of particular significance is illustration 8 of section 84 of the Restatement, which reads: 'A makes a bilateral agreement with the United States Government. The promise of the Government though unenforceable is not, because of that, insufficient consideration for A's promise.' (See also 1 Corbin, supra, p. 468.) A similar exception must be recognized here."

Accordingly, it is concluded that in the Watkins case the discussion of mutuality of contractual obligation was and is erroneous dictum. Appellants' reliance thereon has made necessary a lengthy discussion herein to disclose the error.

The Watkins case affords no authority to support a suit for damages based on breach of contract against the state or its Department of Highways. The Court having so concluded, it necessarily follows that the other leg on which appellants seek to stand, Derby Road Building Company v. Commonwealth, Ky., 317 S.W.2d 891, must likewise fold.

The decision in the Derby case was based on the mutuality obligation dictum in the Watkins case; hence, the holding in the Derby case is wrong, and that case is overruled on this point. Thus is illustrated the danger of dictum.

The allowance of suits for damages such as this one would create havoc and confusion in the operation of the Department of Highways. The Department's highway construction program is much dependent on long range planning. Much of this program must be well coordinated in order to realize the most from federal funds available. The ordinary maintenance and construction of highways with unmatched federal funds would suffer most since sound fiscal policy would require the matching of all available federal funds. It would not take many suits of the caliber of this one to disrupt the orderly planning and operation of the Department. The wisdom of this sound public policy, as heretofore expressed by Deitzman, J., is obvious.

In view of the constitutional provision, the sound public policy in support of it, and the long adherence by this Court to the principle of sovereign immunity, the plea on behalf of the appellees was a proper defense to the action, including the demand for the $1,000. While much of the discussion herein has been directed toward actions for damages, what has been said is equally applicable to actions on a contract. The demand for the final $1,000 due under the contract falls in this category.

The review of the cases on sovereign immunity forces the conclusion that such cases as the Watkins and Michael cases and the cases cited therein, in so far as they have permitted the state to be sued on a contract or for damages without express legislative consent, are unsound. To reiterate, the constitutional section in question has always been very explicit. The word "may" in Section 231 indicates that suits against the Commonwealth may be brought as a matter of legislative grace. Commonwealth v. Chevis, 4 Ky.Law Rep. 892. Only by authority of an enactment of the Legislature may such suit be brought, and then the manner of bringing a suit and the court in which it may be brought must be directed. To the extent that the cases mentioned are inconsistent herewith, they are overruled. This view renders it unnecessary to consider any other questions presented.

So far as appellants' right to the $1,000 is concerned, no hesitancy is felt in saying that the appellees will doubtless honor it as well as the amount already paid under the contract.

Judgment on appeal is affirmed and on cross-appeal is reversed to sustain appellees' plea of sovereign immunity as a defense.

MOREMEN, J., dissents.