UNIVERSITY OF LOUISVILLE,
Appellant and Cross-Appellee,

v.

Kathryn MARTIN, Appellee and
Cross-Appellant.

Court of Appeals of Kentucky.

Opinion Rendered March 10, 1978.

As Modified On Denial of Rehearing
June 23, 1978.

Discretionary Review Denied Oct.
24, 1978.

Ordered Published Dec. 1, 1978.

Robert Matthews, John S. Reed, Jr.,
Greenebaum, Doll, Matthews & Boone, Ed-

win W. Paul, Legal Affairs Officer, University of Louisville, Louisville, for appellant and cross-appellee.

Frank A. Logan, John T. Fowler, Louisville, for appellee and cross-appellant.

Before GANT, HOGGE, and WILHOIT, JJ.

GANT, Judge.

This is an appeal from a judgment of the Jefferson Circuit Court granting the appellee, Kathryn Martin, one year's salary ($14,400) and one year's contribution to the appropriate retirement fund based upon one year's salary from the appellant, University of Louisville. The pertinent facts are set out in a companion case, *Martin v. University of Louisville*, 541 F.2d 1171 (6th Cir. 1976) wherein the appellant (appellee herein) through the Federal court sought back wages she claims were wrongfully withheld following her dismissal from a teaching assignment at the University of Louisville. On appeal before us is a similar request for relief filed in the State court.

As presented by the appellee, the decisive issue on appeal is whether the language contained in KRS 273.171(2) which was incorporated into and adopted as a part of the Articles of Incorporation of the University of Louisville constitutes an expression by the Commonwealth of Kentucky of consent to suit against the University of Louisville in state courts as permitted by § 231 of the Kentucky Constitution. We choose to answer in the negative.

A brief review of the statutory language and history surrounding this controversy is helpful in resolving this dispute. Prior to July 1, 1970, the University of Louisville was a municipal institution under Chapter 165 of the Kentucky Revised Statutes and, by KRS 164.810(3) promulgated that year, the university was designated as a "state institution". At this time the university amended its Articles of Incorporation by adopting as a part of its charter the provisions of KRS 273.161 et seq. which provides in KRS 273.171(2) that the university shall have the power "[t]o sue and be sued, com-

plain and defend . . ." This provision would have been applicable even though the university had not amended its Articles of Incorporation since KRS 273.387(3) dictates that any ". . . nonstock, nonprofit corporation in existence on June 30, 1968 . ." includes in its Articles the provisions of KRS 273.161 to 273.390 without the necessity of amendment. The doctrine of sovereign immunity is granted in § 231 of our Constitution wherein it states: "The General Assembly may, by law, direct in what manner and in what courts suits may be brought against the Commonwealth."

First this Court must determine whether the University of Louisville comes under the protective veil of the defense of sovereign immunity under any circumstances. As stated above, the university became a state institution of higher education in mid-1970 with all the attendant powers and protections, including immunity from suit except where the Kentucky General Assembly specifically waives it. *Knott County Board of Education v. Mullins*, Ky.App., 553 S.W.2d 852 (1977); *Smith v. Commonwealth of Kentucky Department of Highways*, Ky., 495 S.W.2d 178 (1973); *Daniel's Adm'r. v. Hoofnel*, 287 Ky. 834, 155 S.W.2d 469 (1941); *Commonwealth v. Madison*, 269 Ky. 571, 108 S.W.2d 519 (1937). The doctrine extends to both actions in tort and contract. *All-American Movers v. Kentucky Ex Rel. Hancock*, Ky.App., 552 S.W.2d 679 (1977) and *Foley Construction Co. v. Ward*, Ky., 375 S.W.2d 392 (1964).

Next we must consider whether the defense is applicable to situations of this type. In essence the appellee contends that the contract claim herein is not a suit against the Commonwealth within the scope of § 231. In support of this position she cites several cases, including *Kentucky State Parks Commission v. Wilder, et al.*, 260 Ky. 190, 84 S.W.2d 38 (1935); *J. S. Watkins v. Dept. of Highways of the Commonwealth*, Ky., 290 S.W.2d 28 (1956); and *Board of Councilmen of City of Frankfort v. State Highway Commission*, 236 Ky. 253, 32 S.W.2d 1008 (1930). Upon a close reading of these cases, it is readily apparent

that each action was maintained either to compel state officers or agencies to perform a duty imposed upon them by law or to refrain from doing something that the law directs them not to do and that such actions are not regarded as suits against the state as required by § 231. In essence, these actions constitute actions of mandamus or prohibition which were not directed against the state but rather toward the official having the ministerial duty to execute the contract or comply with its terms. Although criticized on other grounds in *Foley Construction Co. v. Ward, supra,* the case of *J. S. Watkins v. Dept. of Highways of the Commonwealth of Kentucky, supra,* notes this distinction wherein it states:

. . . it has been recognized that a certain class of action may be brought against an agency of the state government even though not expressly authorized by the legislature. If the suit is to compel the performance of a ministerial duty by a state agency, it is not a suit against the state within the scope of sovereign immunity. 81 C.J.S., States, § 216(3). In this latter category is an action to compel a state agency to perform a contract legally entered into. *Kentucky State Parks Commission v. Wilder,* 256 Ky. 313, 76 S.W.2d 4.

This position is consistent with the earlier view of the court in *Board of Councilmen v. State Highway Commission, supra,* which states:

It is to be observed that in cases of this kind the distinction is drawn between suits seeking to create or increase the liability of the state, and suits seeking to compel administrative officers to satisfy a liability theretofore created—one to establish a right and the other to satisfy a right already established under authority of law.

In the present case the basis for her claim is a decision by the university to terminate her at the end of the spring semester in 1970. Whether she was denied a hearing or she failed to request one does not have any bearing on the propriety of the Board's decision which is the subject of this controversy. Clearly this is a proprietary function of the university and any recovery against it would ". . . create or increase the liability of the state . . ." In the absence of performance on her part, the granting of the requested relief constitutes damages for a breach of contract by the university measured by the amount of her wages during the period of the breach. See *Foley Construction Co. v. Ward, supra* ; *Commonwealth of Kentucky Department of Highways v. Davidson,* Ky., 383 S.W.2d 346 (1964); *Wells v. Commonwealth of Kentucky,* Ky., 384 S.W.2d 308 (1964).

We are now confronted with the problem of whether the Commonwealth waived the university's immunity from suit in state courts by the language contained in the original charter of the university and the language of KRS 273.171 regarding the power "[t]o sue and be sued, complain and defend . . ." As previously mentioned, the defense of sovereign immunity is a constitutional protection that can be waived only by the General Assembly. See *Wells v. Commonwealth of Kentucky Department of Highways, supra.* In a letter to both attorneys dated January 12, 1977, the trial judge explained that immunity was waived because the university bound itself and the teachers to an "elaborate document" referred to as "The Red Book." Appellee takes this reasoning one step further by arguing that the university waived immunity by its charter which states that it can "sue and be sued." Both are in error in that § 231 of the Constitution and the cases interpreting it have limited the right to waive immunity to the General Assembly. Thus, any action taken by the university cannot affect a waiver.

In the alternative the appellee contends that the legislature had waived immunity by the "sue and be sued" language of KRS 273.171. The courts of this Commonwealth confronted a similar argument in *Wallace v. Laurel County Board of Education,* 287 Ky. 454, 153 S.W.2d 914 (1941) and concluded that the words "to sue and to be sued" in the legislative acts creating Boards of Education do not authorize an

action for negligence. As previously stated, the governmental immunity protection afforded by § 231 extends to contracts as well as actions in tort and as such we believe the reasoning in *Wallace* is applicable to the case at bar.

This Court is cognizant of the dictum in *J. S. Watkins v. Department of Highways of the Commonwealth of Kentucky, supra,* discussing the "mutuality of obligation" inherent in a contract and the court's conclusion that ". . . the legislature, in authorizing the Highway Department to enter into a contract, by necessary implication, authorized it to sue or be sued thereon." Cf. *Derby Road Building Co. v. Commonwealth,* Ky., 317 S.W.2d 891 (1958); Contra, *H. E. Cummins & Sons Construction Co., Inc. v. Turnpike Authority of Kentucky,* Ky.App., 562 S.W.2d 651, 24 K.Y.L.Summ. 14 (October 28, 1977) and *George M. Eady Co. v. Jefferson County,* Ky., 551 S.W.2d 571 (1977). However, the court explicitly rejected this viewpoint some six years later in *Foley Construction Co. v. Ward, supra,* wherein it states:

> . . . it is concluded that in the *Watkins* case the discussion of mutuality of contractual obligation was and is erroneous dictum . . . The *Watkins* case affords no authority to support a suit for damages based on breach of contract against the state or its Department of Highways . . . The allowance of suits for damages such as this one would create havoc and confusion in the operation of the Department of Highways . . The wisdom of this sound public policy . . . is obvious.

 The proper course to be followed in actions of this type is found in KRS 44.260 et seq. which provides for ". . . an action against the Commonwealth on a claim for enforcement of contract or on a claim for breach of contract . . ." This section, the Board of Claims Act, was enacted by the legislature to waive the defense of immunity by providing a remedy for this particular character of claim. In prescribing this procedure, the legislature was acting under § 231, which authorizes the General Assembly to direct the manner and in what courts suits may be brought against the Commonwealth. As a matter of grace, such a remedy may be granted, withdrawn or restricted at the will of the legislature. *University of Kentucky v. Guynn,* Ky., 372 S.W.2d 414 (1963). The present claim should have been brought in the Franklin Circuit Court as provided by KRS 44.270(1) and her failure to do so should have resulted in a dismissal by the Jefferson Circuit Court. See *H. E. Cummins & Sons Construction Co., Inc. v. Turnpike Authority of Kentucky, supra.*

For the above stated reasons, the judgment of the lower court is reversed with directions to enter an order dismissing the action in this court.

All concur.