Sammy LEONARD, Appellant,

v.

CORRECTIONS CABINET, Barbara Hickey in her Individual and Official Capacities; and Al Parke in his Individual and Official Capacities, Appellees.

No. 91–CA–291–MR.

Court of Appeals of Kentucky.

April 3, 1992.

Sara L. Pratt, Washington, D.C., for appellant.

Barbara W. Jones, Corrections Cabinet, Frankfort, for appellees.

Before HOWERTON, HUDDLESTON and McDONALD, JJ.

HOWERTON, Judge.

Sammy Leonard appeals from a summary judgment dismissing his complaint for injunctive relief and damages for employment discrimination. We disagree with the trial court's conclusion that Leonard's claim is totally barred by the applicable statutes of limitation and we reverse on that issue. However, we affirm on the merits that Leonard's complaint failed to state an actionable claim for relief.

Leonard is currently employed by the Corrections Cabinet as a classification and treatment officer. In June 1990, he applied for a position as a correctional captain, one which required that he qualify as a peace officer pursuant to KRS 196.037 and KRS 61.300. Leonard met the educational and experience requirements and was scheduled for an interview. However, because of a 1966 felony conviction for uttering a forged instrument,[1] the interview was cancelled and Leonard was notified that he was disqualified from consideration for the position. He had been informed on two previous occasions that he did not qualify for the position—once in 1983 and again in

1986. Leonard's civil rights were restored in 1973 pursuant to §§ 145 and 150 of the Kentucky Constitution, thus removing any impairment of his right to vote and hold public office. However, the Corrections Cabinet relied on KRS 196.037 and KRS 61.300(3) in disqualifying Leonard from holding peace officer positions.

KRS 196.037 provides in part, "All personnel of the cabinet, while acting for the cabinet in any capacity entailing the maintenance of custody over any prisoners, shall have all the authority and powers of peace officers." KRS 61.300 provides, "Nonelective peace officer or deputy—Qualifications.—No person shall serve as a deputy sheriff, deputy constable, patrol, or other nonelective peace officer, or deputy peace officer, unless: ... (3) He has never been convicted of a crime involving moral turpitude...."

Leonard filed a complaint in Franklin Circuit Court in July 1990, alleging constitutional and civil rights violations under both state and federal law. *See* U.S. Const. amends. V, XIV; Ky. Const. §§ 2, 145, 150; 42 U.S.C. § 1983; KRS 344.450. Leonard sought, among other things, injunctive relief requiring the Cabinet to hold the correctional captain position open until the case was resolved, injunctive relief requiring the Cabinet to allow him to receive full consideration for all correctional officer positions for which he is otherwise qualified, and back wages and damages. Although the trial court discussed the differences between a restoration of civil rights and a full pardon during the hearing on the motion for summary judgment, the order itself dismissed the action as time barred and for failure to state a claim. Leonard then brought this appeal.

Leonard cites several issues on appeal, among which are unlawful racial discrimination, deprivation of a property interest in violation of the Fourteenth Amendment of the U.S. Constitution, arbitrary action on the part of state officials, and violation of the Equal Protection Clause of the U.S.

---

1. Leonard was sentenced to five years in prison and served approximately one year before being paroled.

Constitution. Because the statute of limitations issue is pivotal to this appeal, we begin our discussion there.

■ Leonard alleged a violation of both his state and federal rights. The applicable statute of limitations period in Kentucky for a federal civil rights claim is one year. KRS 413.140(1)(a); *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). While state law governs the substantive limitation period, federal law governs when the cause of action accrues, and thus when the statute begins to run. *Cf. Perez v. Laredo Junior College,* 706 F.2d 731, 733 (5th Cir.1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 708, 79 L.Ed.2d 172 (1984). The applicable statute of limitations period for a state civil rights claim pursuant to KRS 344.450 is five years. KRS 413.120(2); *Kentucky Com'n on Human Rights v. City of Owensboro,* Ky., 750 S.W.2d 422 (1988).

■ Leonard characterizes this as a continuing violation case and a continuing application of an unlawful employment policy or practice, while the Cabinet characterizes it as a single, operative act. The Cabinet asserts that when Leonard was informed in 1983 that he was not eligible for consideration for peace officer positions with the Cabinet because of the 1966 conviction, the statute of limitations was triggered and thus his claim was time barred under either the federal or state statutes of limitation. Leonard claims that the 1990 incident is but the most recent violation of his rights and thus his complaint was timely filed.

We approach this issue carefully, mindful that the Corrections Cabinet is not presently engaged in a deliberate discriminatory practice; Cabinet officials are merely attempting to enforce or comply with a statute that has not been held unconstitutional. The cases we looked to for analogy dealt with situations where it is argued that an employer, for instance, is engaged in a practice violative of statutes or the Constitution. Furthermore, many cases we examined dealt with federal statutes other than 42 U.S.C. § 1983. Nevertheless, the cases offer guidance.

When a civil rights violation is alleged, the violation is either a continuing one taking place over a span of time and representing a policy or practice of discrimination, or it is a separate, distinct, or discrete act. *Perez, supra,* 706 F.2d at 733. Presumably, a statute of limitations would never run on a claim for a continuing violation by the nature of the violation. A single act of discrimination may be actionable, if the complaint is filed within the applicable limitations period, or if the statute of limitations begins to run again with each new violation. *Id.* However, "those violations preceding the filing of the complaint by the full limitations period are foreclosed." *Id.* at 733–34.

An example of a discrete act is a discriminatory discharge of a person in a protected class, and the limitations period begins to run at the time of discharge. *See London v. Coopers & Lybrand,* 644 F.2d 811 (9th Cir.1981). An example of a continuing violation is *Jenkins v. Home Insurance Co.,* 635 F.2d 310 (4th Cir.1980), where a female employee was paid less than her male co-workers doing substantially the same job. Each time she was paid was a separate but related act throughout the course of her employment and constituted a continuing violation. 635 F.2d at 311–12. So, too, the continued garnishment without proper notice of the lawsuit in which the order of garnishment was obtained was a continuing violation of the garnishee's due process rights. *Jackson v. Galan,* 868 F.2d 165 (5th Cir.1989).

Failure to promote an employee may be either a continuing violation or a discrete act. *Clark v. Olinkraft, Inc.,* 556 F.2d 1219 (5th Cir.1977), *cert. denied,* 434 U.S. 1069, 98 S.Ct. 1251, 55 L.Ed.2d 772 (1978); *Reed v. Lockheed Aircraft Corp.,* 613 F.2d 757 (9th Cir.1980).

We do not believe the Cabinet's actions constitute a continuing violation, nor do they constitute a single act for which Leonard may never seek redress because of his failure to challenge the Cabinet's action in 1983. The disqualification for a peace officer position in 1983 was a discrete act, but one which was repeated in 1986 and 1990.

Thus, the period for filing a claim began anew each time Leonard applied for and was denied consideration for peace officer positions based on his 1966 conviction.

> If, on the other hand, the statutory violation does not occur at a single moment but in a series of separate acts and if the same alleged violation was committed at the time of each act, then the limitations period begins anew with each violation and only those violations preceding the filing of the complaint by the full limitations period are foreclosed. (Footnotes omitted.)

*Perez, supra,* 706 F.2d at 733–34.

This case is similar to *Roberts v. North American Rockwell Corp.,* 650 F.2d 823 (6th Cir.1981). That was a case of sex discrimination in employment in which Vivian Roberts was told in December 1972 that Rockwell did not hire women and she was refused an application. That same month, Roberts' request for an application was again denied by the unemployment office, although her son-in-law went in and was promptly given an application. Roberts filled out that application and sent it in to Rockwell, but she heard nothing. From December 1972 until August 1973, she periodically went to the unemployment office to check on the status of her application. Each time, she was told she would not be hired because she was a woman.

On September 11, 1973, Roberts and two other women went to the unemployment office and requested applications for Rockwell and were again refused. They contacted the Kentucky Commission on Human Rights (KCHR) which resulted in the women being given applications. Roberts did not fill out a new application since she already had one on file, but she filed a formal charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on October 5, 1973. In September 1974, KCHR and Rockwell entered into a conciliation agreement and Roberts was offered a position at the plant.

Roberts obtained no other specific relief in the agreement, and after receiving a right-to-sue letter from EEOC, she brought suit against Rockwell in January 1978.

Rockwell was granted a summary judgment on statute of limitations grounds. Under Title VII (42 U.S.C. § 2000e–5(e)), a charge of employment discrimination must be filed with the EEOC within 180 days of the alleged discrimination. The Sixth Circuit Court of Appeals reversed, finding that Roberts was "subjected to an ongoing pattern of discrimination." 650 F.2d at 826. Rockwell argued that the discrimination was to be measured from the date of the failure to hire and that date was when Roberts was first told in 1972 that Rockwell did not hire women. The court disagreed, saying that if there is an ongoing discriminatory policy in effect, then the violation of Title VII is also ongoing. *Id.* at 827.

The court found a continuing violation of Title VII, citing with approval *Acha v. Beame,* 570 F.2d 57, 65 (2d Cir.1978) ("A continuously maintained illegal employment policy may be the subject of a valid complaint until a specified number of days after the last occurrence of an instance of that policy."). *Roberts,* 650 F.2d at 828.

The court also stated,

> *[a]lternatively,* we hold that Mrs. Roberts' complaint with the EEOC was timely because a discriminatory act occurred on September 11, 1973, well within the 180–day time period. [She filed with the EEOC in October 1973.] As noted above, Mrs. Roberts filed a formal application with the company in December of 1972. However, she never received a formal rejection notice from Rockwell. Instead, she was continually told that the company did not hire women. The most recent time she was told this was on September 11, 1972 [sic], when she, her sister and a friend visited the Unemployment Office. This separate, distinct failure to consider Mrs. Roberts for employment because of her sex was a separate act of discrimination. (Emphasis added.)

650 F.2d at 828. Since the discriminatory act of September 11, 1973, was well more than 180 days past the first act of discrimination in December 1972, yet the court held her complaint timely, we interpret this as

commencing a new limitations period with each new act of discrimination.

Thus, we hold in the present case that even though Leonard was unequivocally told in 1983 that his prior conviction forever barred him from consideration for positions with the Corrections Cabinet requiring peace officer status, his claim was revived each time he applied for the same position and was rejected for the same reasons. To hold otherwise would permit the Cabinet to continue an allegedly discriminatory practice indefinitely merely because the victim failed to seek relief at the first offense. This might be fair if the victim were seeking redress for some discrete act committed long ago, but it is not fair if the violation, and not merely the impact, is of an ongoing or repetitive nature. *Cf. United Air Lines v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977); *Perez, supra,* 706 F.2d at 734.

■ Staleness of the claim is not a concern where damages are restricted to the full limitation period preceding the filing of the complaint. *See Havens Realty Corp. v. Coleman,* 455 U.S. 363, 380, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982); *Perez, supra,* 706 F.2d at 734. Thus, we determine that any claim for alleged violation dating back to 1983 is time barred. Likewise, Leonard's federal claim for the 1986 denial of consideration is barred, but his state and federal claims from 1990 and his state claim from 1986 are not barred by the applicable statutes of limitation. However, we have closely examined the merits of Leonard's case and reluctantly conclude that his complaint, as presented, and in light of the existing law, fails to state a claim for relief. For this reason, we affirm the dismissal.

■ The trial court ruled that the factual basis of the complaint did not state a claim of arbitrary and discriminatory conduct, as the applicable statutes (KRS 61.300 and KRS 196.037) apply to all former felons, not just black felons. The court stated that Cabinet officials prohibit all former convicted felons from serving as peace officers, not just Leonard. Leonard cites *Green v. Missouri Pacific Railroad,* 523 F.2d 1290 (8th Cir.1975), for a case which found that disqualification based on felony convictions disqualified black applicants at a substantially higher rate than whites. Although, if given the opportunity, Leonard might be able to prove that the Cabinet has denied employment or promotions to more black applicants than white applicants because of the felon status, we know of no established protected class involving persons with felony records, and we decline to create one. Furthermore, we are not dealing with a Cabinet policy, but the clear implementation of state statutes. Since, as we will later point out, we do not conclude that the statutes are unconstitutional, Leonard's best remedies would be to obtain a full pardon from the governor under § 77 of our constitution or to get the General Assembly to modify the prohibition to exclude him from coverage. He would be suitable as a peace officer if, for example, KRS 61.300(3) applied only to felons who used a firearm, were persistent felons, or who were convicted within the past 20 years, or such.

We decline to hold either KRS 61.300 or KRS 196.037 unconstitutional on its face or as applied to Leonard. The Corrections Cabinet is directed not to allow a convicted felon to carry a gun or maintain custody over the prisoners. Even a facially neutral Cabinet "policy" which disproportionately disqualified a protected group would nevertheless be lawful if based on a legitimate business necessity. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The legislature expressed a legitimate state interest when it enacted KRS 61.300 and KRS 196.037. While we might have established a less-restrictive prohibition, we cannot say the statutes are unconstitutional or are unreasonable or unnecessarily restrictive.

■ We further reject Leonard's contention that a nonelective peace officer is a public official pursuant to § 150 of our Constitution. While Leonard's restoration of civil rights under this section of our Constitution will allow him to hold an elective public office, it does not unequivocally allow him to hold any and all positions

of nonelective public employment. *Black's Law Dictionary* 1230 (6th ed. 1990), describes a public office as having a "portion of sovereign power of government ... delegated to [the] position, ... [and] duties must be performed independently without control of superior power other than law." What is meant by "public office," even if § 150 applies to all "public offices," must be evaluated on a case-by-case basis. *Commonwealth ex rel. Hancock v. Clark*, Ky., 506 S.W.2d 503 (1974). We simply do not believe the position he seeks has all the requisites to bring it under the aegis of public office. *See also Lasher v. Commonwealth*, Ky., 418 S.W.2d 416, 418 (1967). Therefore, a restoration of rights to hold an elected public office under § 150 above did not give Leonard the right to seek a nonelective peace officer's status.

■ We also note differences in an outright pardon pursuant to § 77 of our constitution and a restoration of suffrage rights under § 145 or the right to be elected to a public office under § 150. Even a pardon does not restore character so that a disbarred lawyer is entitled to reinstatement. *Commonwealth ex rel. Harris v. Porter*, 257 Ky. 563, 78 S.W.2d 800 (1935). Also, a pardon does not preclude the pardoned offense from enhancing punishment for an habitual criminal. *Stewart v. Commonwealth*, Ky., 479 S.W.2d 23 (1972). Stewart's order of restoration, as was Leonard's, was pursuant to §§ 145 and 150 only. The word "pardon" is not in Leonard's order, and it only restores his civil rights pursuant to §§ 145 and 150 of the constitution. The *Stewart* opinion reads at 26, "Stewart was not pardoned under Section 77, but even if he had been, as he claims, that would not have been a basis for dismissal of the habitual criminal charge."

While a previously-convicted felon may be elected to a peace officer's position and carry a weapon, if his duties so require, *Arnett v. Stumbo*, 287 Ky. 433, 153 S.W.2d 889 (1941), Leonard may not be hired into such a position with the Corrections Cabinet. We see a reasonable distinction. The voters choose the former and presumably waive any objection to the elected officer's carrying a weapon. The voting public has no input over the latter situation. We find no equal protection violation that elective and nonelective peace officers are treated differently.

We further disagree that Leonard has been deprived of a property interest in a prospective job. Since we have already declared that a nonelective peace officer position is for Leonard merely public employment, § 150 of our constitution does not afford him any relief. For the same reason, the Cabinet has not acted arbitrarily in violation of Ky. Const. § 2 in refusing to treat the § 150 restoration of rights as a full and unconditional pardon. Thus, Leonard's substantive due process rights have not been violated.

The legislature has spoken and directed that people (black, white, etc.) who are convicted of felonies involving moral turpitude may not be appointed peace officers. While a governor's pardon under § 77 of the constitution would at least open the door for Leonard's consideration by the Cabinet, his restoration of rights under §§ 145 and 150 does not.

■ Since Leonard has no property interest in a job he has never held, he is also not entitled to procedural due process including an opportunity to be heard by the Cabinet before removing him from the list of applicants. KRS 18A.032(1) has no application because it merely provides for removal from the register of applicants for classified service for certain specified reasons, one of which is a felony conviction within the preceding five years for which there has been no restoration of civil rights and no executive pardon. The statute relates to removal from the personnel register, but does not mandate placement on a register. Further, it is a general statute which does not relate to or override the specific statutory requirements of KRS 61.-300.

In summary, the trial court erred as a matter of law in holding that Leonard's 1990 claims and 1986 state claim were barred by the applicable statutes of limita-

tions. In all other respects, the judgment of the Franklin Circuit Court is affirmed.

All concur.