Debra F. AMMERMAN, Phyllis
W. Guthrie, and Linda W.
Simons, Appellants,

v.

THE BOARD OF EDUCATION OF
NICHOLAS COUNTY, and its mem-
bers in their official capacity only, to-
wit: Louise Zachary, John Cleaver,
Jr., James Dale, David Smoot, and
Samuel Vice, Appellees.

No. 1996–SC–1061–DG.

Supreme Court of Kentucky.

Oct. 26, 2000.

T. Bruce Simpson, Jr., Anggelis, Gordon, Simpson & Roberts, Lexington, for Appellants.

Dawn Curran Letcher, Richardson, Smith & Hughes, Carlisle, Robert L. Chenoweth, J. Gary Bale, Chenoweth Law Office, Frankfort, for Appellees.

Ron L. Walker, Jr., Jane V. Fitzpatrick, Brooks & Fitzpatrick, Lexington, for Amicus Curiae, Kentucky Education Association.

Brent Caldwell, McBrayer, McGinnis, Leslie & Kirkland, Frankfort, Richard M. Sullivan, Edward F. Busch, Conliffe, Sandmann & Sullivan, Louisville, for Amicus Curiae, Kentucky Association of Counties.

## OPINION OF THE COURT

Appellants, current or former teachers at the Nicholas County Elementary School, brought this sexual harassment case against Appellees, the Board of Education of Nicholas County and members of the Board of Education in their official capacities. Appellants did not bring any actions against the alleged sexual harasser or against individuals who may have had a duty to directly supervise his conduct. Appellants sought damages based upon

the conduct of Harry Spickler, a co-worker and teacher at the Nicholas County Elementary School from 1977 until 1993, in a variety of claims sounding in contract, tort, and statutory violation, including violation of KRS 344.010 et seq., the Kentucky Civil Rights Act.

From the evidence it appears that Harry Spickler habitually accosted his female colleagues in a sexually overt manner. It is unnecessary to recount the details of Spickler's conduct. It is sufficient to say that his behavior was lewd and highly inappropriate in the workplace. Through the years numerous complaints were made about Spickler to school supervisory personnel. The response to the complaints was wholly inadequate and included patronizing of the complainants, indications of amusement, indifference, and suggestions that Spickler merely be avoided. Finally, however, Spickler was fired in May of 1993, soon after the first formal written complaint was filed against him. At a hearing before the Inquiry Tribunal of the Kentucky State Board of Education, fifteen teachers came forward to verify the offensive nature of Spickler's conduct.

The trial court dismissed Appellants' claims, finding that Appellants had failed to state a claim for relief for breach of contract; that the tort claims were not actionable and were otherwise time-barred; that the claims alleging violations of KRS 161.190 and 161.164 were not actionable; and that the civil rights claims were barred by the five-year statute of limitations in KRS 413.120(6). In regard to the dismissal of the civil rights claims, the trial court noted that the last alleged incident of harassment occurred 1993, to Appellant Simons, but was not reported. Thus, the trial court found, the claims became time-barred in January 1993 as the last reported incident occurred prior to January 1988.

The Court of Appeals affirmed, holding that although the claims were couched in terms of breach of contract, with a fifteen years statute of limitations, the claims in fact involved sexual harassment, with only a five year statute of limitations. The civil rights claims, the Court of Appeals held, were thus time-barred because the January 1993 incident involving Appellant Simons was the only incident within the limitations period and that a single, isolated comment is legally insufficient to constitute sexual harassment.[1] In so holding, the Court of Appeals noted that it did not condone Spickler's conduct or the school administrators' manner of handling complaints, but that it was obligated to observe the required limitations periods.

Among the defenses now asserted against Appellants and the defense we believe to be dispositive of all Appellants' claims, except those based on KRS 344, is sovereign immunity. Appellants, however, contend that the doctrine of sovereign immunity is inapplicable here because they were required to enter into an employment contract[2] which imposed upon the Board a duty to protect them from the mistreatment to which they were subjected. While acknowledging that sovereign immunity is applicable to contract claims as well as to tort claims, Appellants argue, in effect, that a contract right to be free from sexual harassment exists by virtue of statutory mandate[3] and that it must be accompanied by a remedy for its breach. Accordingly, they reason that our sovereign immunity jurisprudence cannot leave them without a damages remedy.

■ Appellees respond that the doctrine of sovereign immunity applies to boards of education and board members acting in their official capacities; that even if Appellants' claims may be characterized as contract rather than tort claims, sovereign immunity nevertheless applies; and that

---

1. *Galloway v. General Motors Service Parts Operations*, 78 F.3d 1164, 1167 (7th Cir. 1996).

2. KRS 161.730.

3. KRS 160.290.

without an express waiver of sovereign immunity, the claims asserted are barred by KY. CONST. § 231. We agree.

 While the defense of sovereign immunity usually arises from tort claims, *University of Louisville v. Martin*[4] holds unmistakably that sovereign immunity applies as well to contract claims: "The doctrine extends to both actions in tort and in contract." This proposition was stated in *Foley Construction Co. v. Ward,*[5] as follows:

> The review of the cases on sovereign immunity forces the conclusion that such cases as the *Watkins [v. Department of Highways of Com. of Ky.,* Ky., 290 S.W.2d 28 (1956)] and *Michael[Humphreys v. J. B. Michael & Co.,* Ky., 341 S.W.2d 229 (1960)] cases and the cases cited therein, in so far as they have permitted the state to be sued on a contract or for damages without express legislative consent, are unsound.... To the extent that the cases mentioned are inconsistent herewith, they are overruled.[6]

On the ultimate question of school board sovereign immunity, *Clevinger v. Board of Education*[7] is controlling. In an extensive review of the doctrine of sovereign immunity as it applies to county boards of education, this Court held that:

> There has never been any question about the status of a local school board as an agency of state government, but, if there were, such is now beyond the realm of argument because of our decision in *Rose v. The Council for Better Education, Inc.,* Ky., 790 S.W.2d 186 (Rendered, as Modified, September 28, 1989). *Rose* recognizes public schools are a responsibility of the state, and

local school boards exist simply as agencies of state government.... Thus local school districts fall within the express language of the section of our Kentucky Constitution, § 231, which provides immunity to suits "brought against the Commonwealth." Even if sovereign immunity were interpreted as limited to units of government where recovery "would or could constitute a claim upon the state treasury," as proposed in the dissenting opinions in *Cullinan [v. Jefferson County,* 418 S.W.2d 407 (Ky. 1967)], *supra,* and *Louisville Metro. Sewer Dist. v. Simpson,* Ky., 730 S.W.2d 939 (1987), *cert. denied* 484 U.S. 964, 108 S.Ct. 453, 98 L.Ed.2d 393 (1987), local school districts would retain immunity.[8]

Thus, all of Appellants' claims, except the civil rights claims, are barred by the doctrine of sovereign immunity.

 With regard to Appellants' allegations of violations of the Kentucky Civil Rights Act,[9] the core claims in this lawsuit, this Court recently held that the doctrine of sovereign immunity does not prevent suit against the Commonwealth or its agencies based upon this Act.[10] Under the Kentucky Civil Rights Act, it is unlawful for an employer, on the basis of sex, to "discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment ... [or] to limit, segregate, or classify employees in any way which would ... tend to deprive an individual of employment opportunities or otherwise adversely affect status as an employee."[11] The Kentucky Act is similar to Title VII of the 1964 federal Civil Rights Act[12] and should be interpreted

4. Ky.App., 574 S.W.2d 676, 677 (1978).

5. Ky., 375 S.W.2d 392 (1964).

6. *Id.* at 396.

7. Ky., 789 S.W.2d 5 (1990).

8. *Id.* at 10–11.

9. KRS 344.010 *et seq.*

10. *Department of Corrections v. Furr,* 1999–SC–159–DG and 1999–SC–332–DG (2000).

11. KRS 344.040.

12. 42 U.S.C. § 2000e–2(a)(1).

consistently with federal law.[13]

■ In 1986, the United States Supreme Court decided the watershed case of *Meritor Saving Bank v. Vinson*,[14] which held that a sexual harassment claim can be brought based upon a hostile or abusive work environment. For sexual harassment to be actionable under the *Meritor* standard, it must be sufficiently severe or pervasive so as to alter the conditions of the plaintiff's employment and create an abusive working environment.[15] In other words, hostile environment discrimination exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[16] Moreover, the "incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive."[17] As stated by the United States Supreme Court in *Harris v. Forklift Systems*, the harassment must also be both objectively and subjectively offensive as determined by "looking at all the circumstances."[18] These circumstances may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unrea-

sonably interferes with an employee's work performance."[19]

■ Civil rights claims are governed by the five-year statute of limitations provided in KRS 413.120(2). In a sexual harassment lawsuit, the limitations period begins on the date the act of harassment occurs.[20] Yet if the discriminatory act constitutes a "continuing violation," an equitable doctrine often used in hostile environment claims, then the limitations period begins to run anew with each succeeding discriminatory act.[21] Generally, "those violations preceding the filing of the complaint by the full limitations period are foreclosed,"[22] yet the continuing violation doctrine may allow a plaintiff to bootstrap incidents that occurred outside the statute of limitations onto the sexual harassment claim.

■ In determining whether to apply the continuing violation doctrine, the United States court of Appeals for the Fifth Circuit has stated,

> The inquiry, of necessity, turns on the facts and context of each particular case. Relevant to the determination are the following three factors, which we discuss, but by no means consider to be exhaustive. The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to con-

13. *Meyers v. Chapman Printing*, Ky., 840 S.W.2d 814, 821 (1992).

14. 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

15. *Meritor*, 477 U.S. at 67, 106 S.Ct. at 2405, 91 L.Ed.2d at 60; *Harris v. Forklift Systems*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Faragher v. City of Boca Raton*, 524 U.S. 775, 784–86, 118 S.Ct. 2275, 2282–83, 141 L.Ed.2d 662, 675 (1998); *Meyers*, 840 S.W.2d at 821.

16. *Williams v. General Motors Corp.*, 187 F.3d 553, 560 (6th Cir.1999)(*citing Harris*, 510 U.S. at 21, 114 S.Ct. 367 (citations and quotation marks omitted)).

17. *Carrero v. New York City Housing Authority*, 890 F.2d 569, 577 (2d Cir.1989).

18. 510 U.S. 17, 23, 114 S.Ct. 367, 371, 126 L.Ed.2d 295, 302; *Faragher*, 524 U.S. at 786–87, 118 S.Ct. at 2283, 141 L.Ed.2d at 676; *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80–82, 118 S.Ct. 998, 1002–03, 140 L.Ed.2d 201, 208 (1998)(*quoting Harris*).

19. *Harris*, 510 U.S. at 23, 114 S.Ct. at 371.

20. *Waltman v. International Paper Co.*, 875 F.2d 468 (5th Cir.1989).

21. *Leonard v. Corrections Cabinet*, Ky.App., 828 S.W.2d 668, 670 (1992)(*citing Perez v. Laredo Junior College*, 706 F.2d 731, 733 (5th Cir.1983)).

22. *Id.* (*quoting Perez*, 706 F.2d at 733–734).

nect them in a continuing violation? The second is frequency. Are the alleged acts recurring (e.g. a biweekly paycheck) or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence. Does the act have the degree of permanence which should trigger an employee's awareness and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate? [23]

Although all these factors play into the continuing violation calculus, we believe frequency to be especially significant in this case, as we shall explain below.

■■■ These Appellants' complaint was filed on March 28, 1994. Appellant Ammerman resigned in 1988, making her claim time-barred no later than 1993. Appellant Guthrie alleged that she experienced incidents in 1980 and 1985 or 1986. Thus her claim became time-barred no later than 1991. Only Appellant Simons alleges to have been accosted inappropriately by Spickler within the limitations period—once, in 1993. She also claims that she experienced another episode of harassment by Spickler in 1983, a decade earlier and well outside the limitations period.

■■■ The most recent incident alleged by Simons, a brief, off color comment, cannot constitute actionable sexual harassment as a matter of law because this single, isolated comment does not satisfy the severe and pervasive standard and cannot "reasonably be thought to constitute sexual harassment." [24] As stated recently by the United States Supreme Court, "offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in 'the terms and conditions of employment.'" [25] We are unable to find any authority holding that a single incident can support a claim for "hostile environment" sexual harassment. Moreover, we agree with the Court of Appeals that the two incidents involving Simons cannot be linked together to form a continuing course of conduct because the incidents were separated by a decade. Although, in considering the frequency criterion of the continuing violation doctrine, courts should not perform a "mechanical calculation," [26] the time span in this case is extreme. Appellants cite no authority supporting the connection of two incidents so far removed from one another in time.

■■■ Our reasoning is supported by *Galloway v. General Motors Service Parts Operations*,[27] in which the United States Court of Appeals for the Seventh Circuit provided an astute analysis of the vexatious issue of "when conduct occurring outside the statute of limitations may, by virtue of its link with recent conduct, be made a basis for a legal claim." [28] In doing so, it noted that, "[a]cts of sexual harassment so discrete in time or circumstances that they do not reinforce each other cannot reasonably be linked together into a single chain, a single course of conduct, to defeat the statute of limitations." [29] The Seventh Circuit also stated,

> The most difficult case arises when a long-continued series of harassing acts definitely are a series, a pattern, and not

**23.** *Waltman*, 875 F.2d at 475 (*quoting Berry v. Board of Supervisors of Louisiana State University*, 715 F.2d 971 (5th Cir.1983)).

**24.** *Galloway* at 1167.

**25.** *Faragher*, 524 U.S. at 786–87, 118 S.Ct. at 2283, 141 L.Ed.2d at 676.

**26.** *Waltman*, 875 F.2d at 476 (5th cir.1989).

**27.** 78 F.3d 1164.

**28.** *Id.* at 1165.

**29.** *Id.* at 1166 (*citing Koelsch v. Beltone Electronics Corp.*, 46 F.3d 705, 707 (7th Cir. 1995)).

merely a set of discrete events, yet it was evident long before the plaintiff finally sued that she was the victim of actionable harassment. It seems to us that in such a case, while she can still sue provided that the last act of harassment occurred within the statute of limitations, she cannot reach back and base her suit also on conduct that occurred outside the statute of limitations; for she has no excuse for waiting that long.[30]

In finally resolving the issue, the Seventh Circuit concluded that under the continuing violation doctrine,

"[T]he plaintiff may not base her (in some cases his) suit on conduct that occurred outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on that conduct, as in a case in which the conduct could constitute, or be recognized, as actionable harassment only in the light of events that occurred later, within the period of the statute of limitations."[31]

We believe that this approach is the most reasonable and practical.

Applying this principle to the instant case, it is clear from the facts that Appellant Simons was the subject of two isolated episodes of alleged harassment. Due to the significant expanse of time separating these episodes, they cannot be joined together to form the basis for a legal claim. What remains, therefore, is a single off-color comment made within the limitations period. This single incident is legally insufficient to constitute actionable sexual harassment.

Although we do not condone the conduct complained of herein, either by Spickler or school officials, it is imperative that plaintiffs' claims be filed promptly and that limitations periods be observed, "thereby enhancing the likelihood of accurate deter-

minations and removing debilitating uncertainty about legal liabilities."[32]

For the foregoing reasons, we affirm the courts below.

LAMBERT. C.J., and COOPER, KELLER, and JOHNSTONE, JJ., concur.

COOPER, J., files a separate concurring opinion in which LAMBERT, C.J., and KELLER, J., join.

WINTERSHEIMER, J., files a separate dissenting opinion in which GRAVES and STUMBO, JJ., join.

COOPER, Justice, concurring.

I concur in the majority opinion because I agree that the causes of action in this case were barred by the statute of limitations. However, I also believe, as expressed in my dissenting opinion in *Department of Corrections v. Furr*, 23 S.W.3d 615 (2000), that these causes of action are precluded by the principle of sovereign immunity.

LAMBERT, C.J., and KELLER, J., join this concurring opinion.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from the majority opinion because the statute of limitations does not bar the civil rights claims presented when there is a strong case of continuing sexual harassment as there is here.

The General Assembly of Kentucky has authorized the Commonwealth to be sued for a violation of the Kentucky Civil Rights Act codified in KRS 344.010 et seq. My reading of the record in this case indicates that the Board of Education has candidly conceded that Chapter 344 amounts to a waiver of sovereign immunity, both in its original brief and its response to the peti-

---

30. *Id.* at 1167 (*citing Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 446 (7th Cir.1994); *Selan v. Kiley*, 969 F.2d 560, 565–66 (7th Cir.1992)).

31. *Id.*

32. *Galloway* at 1165.

tion for rehearing. This Court has recently decided in *Department of Corrections v. Dorsey Furr,* Ky ., 23 S.W.3d 615 (2000), that the Commonwealth of Kentucky, as an employer under the Kentucky Civil Rights Act, does not enjoy the privilege of sovereign immunity. The majority decision does briefly acknowledge the application of both the federal and state civil rights acts. *Cf. Kerns v. Bucklew,* 178 W.Va. 68, 357 S.E.2d 750 (1987), which provides a detailed analysis of state sovereign immunity and the supremacy of the Federal Civil Rights Act. The Federal Act is reflected in KRS 344.010.

The failure of the majority opinion to accept the devastating consequences of a hostile work environment is serious error. It is beyond question that the behavior of the dismissed teacher was demeaning, crude and generally intolerable and unacceptable. It is further beyond belief that this created a totally hostile work environment. A civil rights violation can be of a continuing nature over a considerable span of time. *Leonard v. Corrections Cabinet,* Ky.App., 828 S.W.2d 668 (1992). KRS 413.120(2) provides for a five-year statute of limitations, with the period of limitations beginning to run on the date on which the act occurred. If a plaintiff can demonstrate that the violation is continuing, then the time limitation begins to run with each new violation. Here, the five-year period began to run on May 3, 1993, when Spickler was terminated by the school system.

*Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), is the leading case on a hostile work environment following the decision of the U.S. Supreme Court in *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

Here, there were numerous complaints of incidents about the inappropriate conduct which had interfered with the work performance of the teachers who were harassed. The work environment was pervasively severe and hostile so as to constitute a continuing sexually hazardous work environment. Such questions are matters of fact and not questions of law and are not suitable for summary judgment. Approximately 17 teachers were subjected to the abuse between 1983 and 1993. Whether all of these acts were severe and continuing enough to constitute a hostile work environment is certainly a question for a jury. *Cf. Meyers v. Chapman Printing Co.,* Ky., 840 S.W.2d 814 (1992). The hostile work environment was established not only by the behavior of Spickler and his actions against the individuals but also by his acts against other female teachers which were acknowledged through the years. As originally noted by this Court in its initial opinion "We have no doubt of the appellants' contention that a hostile work environment existed...." There was testimony before the Inquiry Board of the Kentucky Board of Education that "Spickler's conduct was common knowledge among the teachers and that all teachers tried to avoid him."

Here, the work environment is a small elementary school and it is reasonable to conclude that the conduct of the accused had an impact on almost every female teacher in the system. The instances of abuse were ongoing and chronic. Generally, a claimant must show a series of related acts "one or more of which falls within the limitations period or the maintenance of a discriminatory system both before and during the period." *Gutowsky v. County of Placer,* 108 F.3d 256 (9th Cir.1997).

It is well settled that unlawful sexual harassment can only be determined by examining "all the relevant circumstances, no single factor being required." *Harris, supra; Meyers, supra.* Here, the underlying case was dismissed on summary judgment, consequently, no jury has ever been able to determine the facts. The misbehavior recited in this case is clearly a continuing violation of the civil rights of the individuals involved and can be the basis of an appropriate civil rights complaint. The clear purpose of the Kentucky

Civil Rights Act was to provide relief for peaceful people thus offended.

KRS 344.450 provides as follows:

Any person injured by any act in violation of the provisions of this chapter shall have a civil cause of action in Circuit Court to enjoin further violations, and to recover the actual damages sustained, together with the costs of the lawsuit. The court's order or judgment shall include a reasonable fee for the plaintiff's attorney of record and any other remedies contained in this chapter.

It is clear that the provisions of KRS 344.450 specifically permit a suit for compensatory damage as well as other relief covered by the Act.

KRS 344.010(1) defines the term "person" for purposes of any cause of action under the statutes as follows:

"Person" includes one or more individuals, labor organizations, joint apprenticeship committees, partnerships, associations, corporations, legal representative, mutual companies, joint stock companies, trusts, unincorporated organizations, trustees, trustees in bankruptcy, fiduciaries, receivers or other legal or commercial entities; the state, any of its political or civil subdivisions or agencies.

KRS 344.030(2) defines employer as a person who has eight or more employees within the state. Clearly, the state and its political subdivisions constitute a person and employer. This section of the statute was amended in 1972 specifically to exclude the United States government and a qualified private membership club exempt from federal taxation in disability discrimination cases only. In 1972, the General Assembly had the opportunity to exclude specifically the Commonwealth and did not choose to do so.

KRS 344.020 states the general purposes of the Kentucky Civil Rights Act as follows:

To safeguard all individuals within the state from discrimination because of familial status, race, color, religion, national origin, sex, age 40 and over, or because of the person's status as a qualified individual with a disability as defined in KRS 344.010, and KRS 344.030; thereby to protect their interest in person dignity and freedom from humiliation, to make available to the state their full productive capacities, to secure the state against domestic strife and unrest which would menace its democratic institutions, to preserve the public safety, health and general welfare, and to further the interests, rights, and privileges of individuals within the state; . . . .

The record in this case supports a compelling case of continuing sexual harassment that did not end until the harasser was terminated in May of 1993. I do not believe the five-year statute of limitation bars the claim presented here. It is not necessary for this Court to reexamine its holdings in *Withers v. University of Kentucky*, Ky., 939 S.W.2d 340 (1997) or *Franklin County v. Malone*, Ky., 957 S.W.2d 195 (1997), in order to provide relief for the teachers in this case.

I would reverse the decision of the Court of Appeals.

GRAVES and STUMBO, JJ., join in this dissent.