ALL-AMERICAN MOVERS, INC., Jimmy
Creech, and Glen D. Creech, Appellants,

v.

Commonwealth of KENTUCKY, ex rel.
Ed W. HANCOCK, Attorney
General, Appellee.

Court of Appeals of Kentucky.

May 20, 1977.

Rehearing Denied July 1, 1977.

Rose & Martin, Williamsburg, for appellants.

Ed W. Hancock, Atty. Gen., Kenneth A. Howe, Jr., Asst. Deputy Atty. Gen., William W. Pollard, Asst. Atty. Gen., Frankfort, for appellee.

Before WHITE, HOWARD and COOPER, JJ.

WHITE, Judge.

This action arose when the Attorney General of the Commonwealth of Kentucky filed suit pursuant to *Ky.Rev.Stat.* § 15.060 [hereinafter cited as KRS] to recover monies paid to appellants. However, before discussing the issues in this case, it is appropriate to describe the factual background.

During the last half of 1971, the Commonwealth of Kentucky was preparing for occupancy of the then new Capitol Plaza Office Building in Frankfort, Kentucky. Competitive bids were solicited via invitations to bid pursuant to KRS 45.360 for the moving of certain effects of state agencies from their present locations to the Capitol Plaza Building. Among the recipients of these invitations was Glen D. Creech, president of All-American Moving and Storage d/b/a Hulette Transfer.

All-American Moving and Storage did submit a bid and as a result, on November 17, 1971, the Division of Purchases, Department of Finance, Commonwealth of Kentucky, awarded Price Contract No. PCT 532–1272 to All-American Moving and Storage for ". . . moving services of various state agencies from their present location *to* the Capitol Plaza Building." (emphasis added)

Jimmy Creech, who is the son of Glen D. Creech, testified in his January 9, 1974 deposition that in February of 1972 he contacted then Governor Wendell Ford and discussed with him the movement of some two million dollars worth of new furniture from storage in the Capitol Plaza basement parking area into the Plaza Building. Creech testified that following this conversation, he then agreed orally with Commissioner of Finance Donald Bradshaw that the Creech organization would proceed to move the new furniture into the Capitol Plaza Building at the rate of $28.00 an hour per four-man crew. This rate of compensation was roughly twice that contained in PCT No. 532–1272. In their depositions, both Governor Ford and Donald Bradshaw denied the substance of Creech's testimony.

On March 13, 1972, the appellants actually began to move the furniture within the Capitol Plaza Building. Soon thereafter, questions arose between certain union personnel and the Creech organization over jurisdiction concerning moving of the furniture. This dispute was amicably resolved and has no bearing on the alleged oral contract before us now.

In order to receive payment under this alleged oral contract, it was necessary to prepare purchase orders (DP's) which would be rejected unless they contained a contract number. It is unclear from the record as to how it was done, but the purchase orders submitted for payment bore the contract number PCT 532–1272. The listed number of hours worked had also been increased in order to compensate for the lower rate of pay under PCT 532–1272.

This contract was modified twice, once on July 19, 1972, when the name of the vendor was changed to All-American Movers, Inc., and again on December 21, 1972, when it was extended to cover the calendar year 1973 and also to cover all state agency moves in the Frankfort, Kentucky area. However, contract number PCT 532–1272 was never intended to and did not cover the moving of furniture within the Capitol Plaza. It is undisputed that the Creech organization did in fact render extensive moving services within the Capitol Plaza Building.

Appellee, Commonwealth of Kentucky, tendered and appellants, Glen D. Creech and All-American Movers, Inc., accepted payments nominally pursuant to PCT 532–1272 as follows:

1. Check No. 1,481,922
   All American Moving & Storage ......$  5,264.00

2. Check No. 1,484,345
   All American Moving & Storage, dba
   Hulette Transfer ..................  5,264.00

3. Check No. 1,550,467
   Hullette (sic) Transfer ..............  25,344.00

4. Check No. 1,561,499
   All American Moving & Storage, dba
   Hulette Transfer ..................  3,472.00

5. Check No. 1,575,000
   Hulette Transfer .................  3,360.00

6. Check No. 1,581,868
   Hulette Transfer ..................  27,052.30

7. Check No. 1,626,040
   All American Moving (sic), Inc. .......  4,256.00

8. Check No. 1,637,189
   All American Movers, Inc. ..........  81,668.00

9. Check No. 1,732,813
   All American Movers ..............  14,112.00

10. Check No. 1,795,130
    All American Movers ..............  7,168.00

11. Check No. 1,824,223
    All American Movers ..............  139,852.60

12. Check No. 1,973,153
    All American Movers ..............  60,488.15
    TOTAL ........................$377,301.15

Appellant Jimmy Creech returned to appellee Commonwealth of Kentucky $9,808.00 as an admitted overcharge on DP 121393, thus making the net amount of payments made to appellants nominally pursuant to PCT 532–1272 total $367,493.05 ($377,301.05 minus $9,808.00).

Lloyd Price, accountant for appellants Glen D. Creech, Jimmy Creech, and All-American Movers, Inc., admitted in his deposition that only $65,266.53 was due to be paid to appellants for hours of work in fact done and packing services actually rendered under the terms of PCT 532–1272.

On May 10, 1973, appellee Commonwealth of Kentucky canceled PCT 532–1272. Suit was filed on August 8, 1973 by the Attorney General to recover monies improperly paid. The counterclaim of appellants for additional amounts due was dismissed on May 22, 1974, by the trial court on the grounds that sovereign immunity prevented suit against appellee founded on an oral contract. Summary judgment holding All-American Movers, Inc., Glen D. Creech, and Jimmy Creech jointly and severally liable for an overpayment of $299,716.92 was rendered on July 18, 1974. It is from that judgment that this appeal results.

The parties to this appeal have argued the issue of sovereign immunity and the propriety of the summary judgment in this case. Since for purposes of appellee's motion for summary judgment the appellee admitted that the amount in excess of $65,266.53 was paid for work performed pursuant to various informal contractual arrangements entered into by the parties, there is no genuine issue of material fact remaining in controversy. Neither do we accept the appellants' contention that each of the purchase orders (DP's) were in themselves lawfully authorized written contracts as required by KRS 44.270(1), for it is clear that in the context of this case the purchase orders were only the means of obtaining payment for services rendered under a contract. The only question left for discussion is whether, as a matter of law, the appellants were entitled to maintain a counterclaim against the Commonwealth based on an oral contract.

■ The Commonwealth maintains, and appellants do not deny, that *Foley Construction Company, Inc. v. Ward*, Ky., 375 S.W.2d 392 (1964), sets forth the law of this jurisdiction as to sovereign immunity. Simply stated, it is that one cannot sue the Commonwealth on a claim unless sovereign immunity has been waived, as it has been on lawfully authorized written contracts. See KRS 44.270(1).

Appellants, however, cite to the case of *Commonwealth v. Barker*, 126 Ky. 200, 103 S.W. 303 (1907), as authority for their position. In *Barker* it was held that where the state was the plaintiff, then the defendant became at once entitled to maintain any counterclaim he had against the state, even though he could not have set up the counterclaim as an original cause of action because of sovereign immunity.

■ Appellee argues that *Foley* has overruled *Barker*, but we cannot accept this contention. Instead we feel that *Barker* is distinguishable from *Foley*, and hold that appellants, in a proper situation, could counterclaim against the Commonwealth.

The question here is whether there was in effect a valid contract for the services that appellants rendered in moving, co-ordinating, and repairing the new furniture in the Capitol Plaza Building. This court takes judicial notice of the fact that the legislature in KRS 44.270(1) limited suit only on "lawfully authorized written contracts." We also note that KRS 45.360(3) provides in part as follows: "No purchase or contract shall be binding on the state or any agency thereof unless approved by the division [of purchases] or made under general regulations which the department of finance may prescribe."

■ There has been no allegation or proof that KRS 45.360(3) has been complied with. We hold, therefore, that this alleged oral contract is void because it is against public policy.

■ Payments made under such a void agreement can be recovered and the acceptance of benefits conferred upon the Commonwealth does not work an estoppel. KRS 15.060; Cf. *Board of Education of Floyd County v. Hall*, Ky., 353 S.W.2d 194 (1962).

We find no merit in appellants' claim that the judgment of the trial court had the effect of taking private property without just compensation. Creech testified in his deposition of January 9, 1974, at 26, that: "Actually there should have been another contract, but in order to have another contract, that means it had to be put out on bid." This shows he knew he was entering into this agreement as a volunteer for services not properly authorized.

The only evidence in this record as to the money properly payable under Price Contract No. PCT 532–1272 indicates that the amount is $65,266.53 instead of $67,776.13. Therefore judgment should be entered for the Commonwealth for $302,226.52 ($367,-493.05 minus $65,266.53).

The judgment is affirmed as modified.

All concur.