RENDERED: SEPTEMBER 24, 2020
TO BE PUBLISHED
FINAL

# Supreme Court of Kentucky

2019-SC-0197-DG
2019-SC-0199-DG

DATE 10-15-20

DOLT, THOMPSON, SHEPHERD &
CONWAY, P.S.C. F/K/A DOLT,
THOMPSON, SHEPHERD & KINNEY, P.S.C.

APPELLANT/CROSS-APPELLEE

V.

ON REVIEW FROM COURT OF APPEALS
CASE NO. 2018-CA-000467-MR
FRANKLIN CIRCUIT COURT
NOS. 17-CI-01129 AND 17-CI-01130

COMMONWEALTH OF KENTUCKY,
EX REL., WILLIAM M. LANDRUM, III,
SECRETARY OF THE FINANCE AND
ADMINISTRATION CABINET AND DANIEL
CAMERON, ATTORNEY GENERAL OF
KENTUCKY

APPELLEES/CROSS-APPELLANTS

## OPINION OF THE COURT BY JUSTICE WRIGHT

### REVERSING

### I. BACKGROUND

This case arises from the 2007 lawsuit filed by then-Attorney General
Greg Stumbo in Pike Circuit Court against Purdue Pharma and other drug
manufacturers regarding the OxyContin epidemic as it plagued the
Commonwealth. After General Stumbo's term ended, Attorney General Jack
Conway pursued the action on behalf of the Commonwealth. On April 1, 2013,
the Pike Circuit Court entered a judgment on liability in favor of the

Commonwealth due to the drug companies' failure to answer requests for admissions.

In 2014, the Office of the Attorney General (OAG) engaged in a competitive bidding process to hire outside counsel to assist in the Commonwealth's litigation against Purdue Pharma, the manufacturer of the drug OxyContin. Under then-Attorney General Jack Conway, the OAG selected the firm Dolt, Thompson, Shepherd & Kinney, P.S.C. (Dolt Thompson).[1] Pursuant to the contract entered into between the Commonwealth and Dolt Thompson, the law firm would be paid for its legal services on a contingency basis—that is, it provided Dolt Thompson would be "compensated for . . . services pursuant to" the contract "[i]f the Commonwealth receives . . . a settlement or award." Dolt Thompson agreed to cover associated legal costs and provide hours of work on the case in return for a contingency fee of 16% of any recovery plus reasonable expenses. The parties performed under the terms of the contract.

In December 2015, the OAG settled with Purdue Pharma for $24,000,000. Purdue Pharma was to make an initial $12,000,000 payment within thirty days of the Pike Circuit Court's entry of judgment, with the remaining $12,000,000 paid in eight yearly installments of $1,500,000 each. The settlement agreement and release (which the Pike Circuit Court incorporated into its final judgment) expressly provided for OAG to pay

---

[1] After General Conway's unsuccessful gubernatorial bid, he became a partner in the firm, which was renamed Dolt, Thompson, Shepherd & Conway, P.S.C.

attorney's fees and expenses out of the settlement amount. Thereafter, Purdue Pharma made the initial $12,000,000 payment to Dolt Thompson. Later, then-Attorney General Andy Beshear authorized Dolt Thompson to pay itself the agreed-upon attorney's fees and expenses from the settlement funds.

In the meantime, it had come to the attention of the OAG's office that its contract with Dolt Thompson had expired in June 2015 even though the firm had continued to provide services and incur costs in the Purdue Pharma case. After discovering the contract had expired, the OAG staff contacted the Finance Cabinet for guidance regarding how to confirm the contractual relationship with Dolt Thompson in order to distribute the settlement funds. Initially, the OAG sent in a purchase request to the Finance Cabinet for an extension of the contract. However, Cabinet personnel instructed the OAG it needed to, instead, submit a request for a new "Not Practicable to Bid" contract. After the OAG so amended its request and resubmitted, the Cabinet approved the purchase request.

In March 2016, the Kentucky General Assembly's Government Contract Review Committee reviewed the purchase request and 2016 contract. Three OAG employees appeared at the hearing to answer any questions. The Committee neither disapproved nor objected to the contract. The following month, the 2016 biennium budget bill was signed into law. The budget specified, **"Purdue Pharma Settlement Funds**: The Attorney General, after payment of attorney's fees and expenses, shall transfer the settlement funds resulting from the suit against Purdue Pharma, et al. as follows . . . ." Act of

3

April 28, 2016, ch. 149 § 1, Part I(A)(19)(8). The expenditures listed after the payment of attorney's fees totaled $7,950,000, which approximately equates to the amount of the Purdue Pharma initial payment less the amount paid to Dolt Thompson.[2]

In October 2017, a year and a half after the budget ordering attorney's fees and costs was signed into law by Governor Bevin, the Finance Cabinet sent a letter to then-General Andy Beshear asserting the Cabinet believed the OAG "may have unlawfully authorized or facilitated payment" to Dolt Thompson. The OAG then filed a complaint in Franklin Circuit Court seeking a declaration that the 2016 contract was enforceable and the payment to Dolt Thompson was proper. The Cabinet filed an action the same day against Dolt Thompson in Franklin Circuit Court. The Franklin Circuit Court consolidated the cases and then granted the OAG's and Dolt Thompson's motions for summary judgment. The Cabinet appealed to the Court of Appeals, which reversed and remanded to the Franklin Circuit Court, ordering that court allow the Cabinet to conduct discovery. The OAG and Dolt Thompson filed a motion for discretionary review to this Court, which we granted. We now reverse the Court of Appeals and reinstate the Franklin Circuit Court's order granting summary judgment.

---

[2] $12,000,000 - $7,950,000 = $4,050,000. OAG had authorized Dolt Thompson to pay itself $4,195,547.47, creating a discrepancy of $145,547.47.

## II. ANALYSIS

### A. Standard of Review

It has long been the law in this Commonwealth that summary judgment "should only be used 'to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant.'" *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 483 (Ky. 1991) (quoting *Paintsville Hosp. Co. v. Rose*, 683 S.W.2d 255, 256 (Ky. 1985)). Furthermore, Kentucky Rules of Civil Procedure (CR) 56.03 states that summary judgment should be granted if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest*, 807 S.W.2d at 480.

"Because summary judgments involve no fact finding, this Court will review the circuit court's decision *de novo*." *3D Enterprises Contracting Corp. v. Louisville & Jefferson Cnty. Metro. Sewer Dist.*, 174 S.W.3d 440, 445 (Ky. 2005). On appeal, "[t]he standard of review . . . of a summary judgment is whether the circuit judge correctly found that there were no issues as to any material fact and that the moving party was entitled to a judgment as a matter of law. Summary judgment is appropriate where the movant shows that the adverse party could not prevail under any circumstances." *Pearson ex rel. Trent v. Nat'l Feeding Sys., Inc.*, 90 S.W.3d 46, 49 (Ky. 2002). As our analysis, *infra*, "raise[s]

5

questions of statutory interpretation, such questions are also subject to de novo review." *Community Fin. Serv. Bank v. Stamper*, 586 S.W.3d 737, 741 (Ky. 2019) (citation omitted). It is through the lens of this *de novo* standard of review that we examine this case.

### B. Model Procurement Code

In *Landrum v. Commonwealth ex rel. Beshear*, 599 S.W.3d 781, 789 (Ky. 2019), we unequivocally held the Model Procurement Code, KRS Chapter 45A, applies to contracts entered into by the OAG. All contracts with the Commonwealth must be in writing. *See* KRS 45A.245(1) (authorizing contract actions against the Commonwealth based on "lawfully authorized written contracts[]"). Contracts may not extend past the biennium in which they are entered. KRS 45A.145(1). Modifications of contracts with the Commonwealth must be in writing and approved by the Office of Procurement Services. *See* Finance and Administration Cabinet Manual of Policies and Procedures, FAP 110-10-00(22) "[d]uring the period of the contract, a modification shall not be permitted in any of its conditions and specifications, unless the contractor receives electronic or written approval from OPS[]".[3] Similarly, FAP 111-43-00(5) provides

> Modification to a PSC shall be processed in the same manner as the original Contract in the state's eProcurement system. A Modification shall be used, if the parties to an established PSC agree, to increase or decrease funds, revise the scope of work, *extend the time for performance within the current biennium* or any other change. (Emphasis added.)

---

[3] KRS 45A.035(1) authorizes the Cabinet secretary to adopt regulations. 200 KAR 5:021 § 2 incorporates the Cabinet's Manual of Policies and Procedures.

We have held "anyone who deals or contracts with public officials or with public bodies must at his own peril take notice of their authority since they can only act within the limits of express or necessarily implied powers conferred upon them by law." *Commonwealth v. Whitworth*, 74 S.W.3d 695, 699 (Ky. 2002) (citation omitted). Long ago, our predecessor court expressed a similar rule with respect to municipalities, "[a]ny other rule would destroy all the restrictions which are thrown around the people of municipalities for their protection by the statute laws and the Constitution and would render abortive all such provisions. The rule in certain instances may be harsh, but no other is practical." *City of Princeton v. Princeton Elec. Light & Power Co.*, 166 Ky. 730, 741, 179 S.W. 1074, 1079 (1915).

## C. Equitable Estoppel

Furthermore, equitable estoppel does not apply in state government procurement, as argued by Dolt Thompson and the OAG. In *All-American Movers Inc. v. Commonwealth, ex rel. Hancock*, 552 S.W.2d 679 (Ky. 1977), the Commonwealth entered into a contract for the moving of various agencies to the Capitol Plaza Building. Thereafter, the moving company claimed it had an oral agreement with the Commissioner of Finance to move new furniture from the building's basement into the building, and performed the work claimed which the Court noted was a benefit to the Commonwealth. Because the oral contract, however, had not been entered into as required by law, it was void. *Id.* at 681. The Court then stated "[p]ayments made under such a void

7

agreement can be recovered and the acceptance of benefits conferred upon the Commonwealth does not work an estoppel." *Id.* (citations omitted).

In this case, Dolt Thompson and the OAG admit that after June 30, 2015, and through the dates the Purdue Pharma case was settled, funds were wired to Dolt Thompson. It is undisputed that when the OAG authorized payment to the law firm, the written contract between Dolt Thompson and the Commonwealth had expired seven months prior. Even under the best-case scenario for Dolt Thompson, (*i.e.,* that it had a renewed contract from July 1, 2014 to June 30, 2015) it admits that the terms of the second contract were identical to the first contract. The renewal provision of the contract provides,

> Upon expiration of the initial term, the contract may be renewed in accordance with the terms and conditions in the original solicitation. Renewal shall be subject to prior approval from the Secretary of the Finance and Administration cabinet or his authorized designee and the LRC Government Contract Review Committee in accordance with KRS 45A.695 and KRS 45A.705, and contingent upon available funding.

The record contains no indication that any renewal of the contract occurred prior to Dolt Thompson taking its fee. Because equitable estoppel does not apply in the realm of government procurement, the Franklin Circuit Court erred in granting summary judgment on that basis in favor of Dolt Thompson and the OAG on these grounds.

### D. 2016 Budget Bill

While Dolt Thompson's contract with the OAG fell under the Model Procurement Code and equitable estoppel does not provide the firm with relief, our analysis of the issue does not end there. The fact that the 2016 budget bill

8

directed payment of "attorney's fees and expenses" in the Purdue Pharma case makes the trial court's grant of summary judgment in favor of OAG and Dolt Thompson the proper ruling herein.

The Legislature has the power to modify the laws it has passed—and exceptions and variances to laws are made when necessary in the budget. A budget may suspend substantive existing statutes which are germane to the Commonwealth's financial framework. *Armstrong v. Collins*, 709 S.W.2d 437 (1986). This Court has even held the Legislature may suspend statutes retroactively when the Governor has acted contrary to existing statutes, but the Legislature wishes to ratify his actions: "[p]lainly then, the General Assembly may *retroactively* suspend statutes . . . provided that the legislature clearly manifests its intent to do so." *Beshear v. Haydon Bridge Co., Inc.*, 304 S.W.3d 682, 694 (Ky. 2010) (internal quotation marks and citation omitted).

It is clearly within the Legislature's authority to temporarily suspend the Kentucky Model Procurement Code (even if the contract failed to fully comply) and order the payment of the "attorney's fees and costs" in the Purdue Pharma case. The only requirement in this suspension of statutes is that the Legislature clearly manifest its intent to do so—as it did in this instance. The 2016 budget bill passed by the Legislature and signed into law by Governor Bevin directed the "attorney's fees and expenses" in Purdue Pharma be paid. 2016 Ky. Acts ch. 149, Part I(A)(19)(8).

The 2016 budget stated no conditions to the payment of the attorney's fees. Rather, as noted previously, it directed the disbursement of amounts

9

roughly equivalent to Purdue Pharma's settlement payment minus Dolt Thompson's 16% contingency fee plus expenses. "'[T]he plain meaning of the statutory language is presumed to be what the Legislature intended, and if the meaning is plain, then the court cannot base its interpretation on any other method or source.'" *Revenue Cabinet v. O'Daniel*, 153 S.W.3d 815, 819 (Ky. 2005) (quoting Ronald Benton Brown & Sharon Jacobs Brown, Statutory Interpretation: The Search for Legislative Intent § 4.2, at 38 (NITA, 2002)).

The budget clearly directed payment of the attorney's fees and expenses from the suit against Purdue Pharma, et al. The budget did not contain any condition, exception or qualification of its order to pay the Purdue Pharma attorney's fees and costs. "[W]e assume that the Legislature "meant exactly what it said, and said exactly what it meant.'" *Id.* at 819 (quoting *Stone v. Pryor*, 103 Ky. 645, 45 S.W. 1136, 1142 (1898) (Waddle, S. J., dissenting)). The 2016 budget was signed into law and clearly ordered payment of the Purdue Pharma attorney's fees and costs.

Could the Legislature actually intend that a contract that failed to fully comply with every part of the model procurement code be paid? Mistakes, oversights, and the vast, complicated organization that is state government requires this in every budget. KRS 45.231 provides for payment of these claims bills. This statutory authority forms the basis of the biennial legislative claims bills which appear to be routinely presented to and passed by the Legislature."

As noted, our rules of statutory interpretation assume the Legislature knows what it is doing and intends the clearly expressed language of the legislation. KRS 45.231 is one example that the Legislature clearly has the ability to order the payment of contracts that have failed to fully comply with the Kentucky Model Procurement Code found in KRS Chapter 45A. Could the Legislature have chosen to order the "attorney's fees and costs" paid based on its own review and investigation instead of delaying to have it considered under KRS 45.231? It would be reasonable to presuppose the Legislature decided to pay the attorney's fees and costs based on the legislators' evaluation of the contract instead of delaying for it to be reviewed as set forth in KRS 45.231. In this case, the Legislature ordered the attorney's fees and costs paid based on its own decision rather than having it presented under KRS 45.231. This is clearly within the power and authority of the Legislature.

There are many reasons the Legislature may have ordered pay for work that complied with the original contract even though the contract was not extended under the Kentucky Model Procurement Code. For example, it would be reasonable to presume the Legislature decided to pay the attorney's fees and costs because the work originally contracted for had been completely and satisfactorily performed. The Legislature could then include the twelve-million-dollar Purdue Pharma settlement in the budget and allow the people of the Commonwealth of Kentucky to obtain the benefits of the money in the 2016 budget rather than waiting to allocate the money in a later budget. This would be a valid reason for the budget to order payment of the attorney's fees and

11

costs. Whether this is the reason is irrelevant because we are bound to follow the clear and unambiguous language of the law. The 2016 budget clearly and unambiguously ordered payment of the "attorney's fees and costs" in the Purdue Pharma case. It would be improper for this Court to presume and impose any conditions upon the clearly expressed budget ordering that Dolt Thompson be paid the earned attorney's fees and expenses in the Purdue Pharma case.

In this case, the Legislature passed a budget that was signed into law by Governor Bevin. The 2016 budget stated **"(8) Purdue Pharma Settlement Funds:** The Attorney General, after payment of attorney's fees and expenses, shall transfer the settlement funds resulting from the suit against Purdue Pharma, et al. as follows: . . . ." *Id.* The Legislature did not have to state the attorney's fees and costs were to be paid in its budget—rather, that was an intentional statement without any conditions. The language is clear the attorney's fees and expenses were to be paid before the other expenditures, and the Court is bound to follow the clear unambiguous language of the legislation.

Here, there are no facts remaining to be discovered. The Legislature acted within its authority and stated the attorney's fees should be paid prior to any other disbursement of the Purdue Pharma funds. There are no facts the Cabinet may discover which will change the words enacted by the Legislature and signed by the Governor in the budget. Therefore, we reverse the Court of Appeals and reinstate the summary judgment granted by the Franklin Circuit

12

Court, though for other reasons than that court expressed in granting the motion.

## III.   CONCLUSION

For the foregoing reasons, we reverse the Court of Appeals' decision and reinstate the summary judgment granted by the Franklin Circuit Court.

Minton, C.J.; Hughes, Keller, Lambert, JJ., concur. Nickell, J., not sitting. VanMeter, J., concurs in part and dissents in part by separate opinion.

VANMETER, J., CONCURRING IN PART/DISSENTING IN PART:  I concur with so much of the majority opinion as states that the OAG's contracts are subject to the Model Procurement Code and that equitable estoppel does not apply as to contracts with the Commonwealth.  I respectfully dissent with so much of the majority opinion as reverses the Court of Appeals' opinion remanding this matter back to the trial court for discovery.  Sufficient factual issues remain unresolved concerning what transpired between the Finance and Administration Cabinet and the OAG to give rise to the post hoc agreement in February 2016.  I further disagree that the legislature tacitly approved these fees, after the fact, by virtue of the 2016 budget bill.  In my view, legislative approval of attorneys' fees was implicitly conditioned on a valid, written contract being in place for those fees.  Additionally, no one has offered any authority to support the OAG's approval of a discounted, present value fee arrangement with Dolt Thompson on future payments due the Commonwealth,

13

which payments appear to have never been received by the Commonwealth.[4]

Even if some issues ultimately were resolved against Dolt Thompson, it has

always had a remedy to collect fees properly due it under KRS 45.231.

---

[4] In 2018, the legislature enacted KRS 45A.717 governing contingency fees for legal services under personal service contracts. If this statute had been in effect for the Dolt Thompson contract, KRS 45A.717(5) would have prohibited this arrangement.

COUNSEL FOR APPELLANT/CROSS-APPELLEE
DOLT, THOMPSON, SHEPHERD
& CONWAY, P.S.C., F/K/A
DOLT, THOMPSON, SHEPHERD
& KINNEY:

J. Guthrie True
Frankfort, KY

Richard M. Guarnieri
Frankfort, KY


COUNSEL FOR APPELLEE/CROSS-APPELLANT
COMMONWEALTH OF KENTUCKY,
ex rel., WILLIAM M. LANDRUM, III,
SECRETARY OF THE FINANCE AND
ADMINISTRATION CABINET; WILLIAM
M. LANDRUM, III, IN HIS CAPACITY
AS SECRETARY OF THE FINANCE AND
ADMINISTRATION CABINET:

Patrick W. McGee
Independence, KY

Hiren B. Desai
Nicholasville, KY

COUNSEL FOR APPELLEE/CROSS-APPELLANT
DANIEL CAMERON, ATTORNEY
GENERAL AND DANIEL CAMERON
IN HIS OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF THE
COMMONWEALTH OF KENTUCKY:

Victor Bruce Maddox
Frankfort, KY

Carmine Gennaro Iaccarino
Versailles, KY

Marc Edwin Manley
Frankfort, KY

Daniel Jay Cameron
Office of the Attorney General

15